DOMENGEAUX, Judge.
Upon application by Ortho Pharmaceutical Corporation, this Court issued a supervisory writ[1] to decide whether the trial court erred in ordering Ortho to further respond to certain interrogatories propounded by plaintiff. Based solely on information contained in Ortho’s writ application, this Court granted the writ. Our primary concern was that the trial court order compelling additional answers, requiring Ortho to pay costs, and possibly subjecting Ortho to an imminent contempt citation for refusing to comply with the trial court’s order, may have been oppressive or unreasonable. Since such an order is not appeal-able, Ortho’s only remedy was to apply for supervisory writs. Advertiser, Division of Independent, Inc. v. Tubbs, 199 So.2d 426 (La.App. 3rd Cir. 1967).[2]
*48 After a careful review of the events preceding this pretrial impasse, and of the applicable law, we conclude that the writ was providently granted and that Ortho is entitled to relief notwithstanding its rather questionable pre-trial tactics.
Familiarity with the chronology of events will facilitate an understanding of our resolution of the issues. Plaintiff, Charles L. Chambers, filed a wrongful death action against Ortho and other defendants on November 14, 1978. On September 7, 1979, plaintiff mailed 63 interrogatories to Ortho to answer. Twenty-three days later, on October 1, 1979, Ortho motioned the court for an extension of time within which to answer and/or object to the interrogatories. The motion was signed by Judge Bond, but was revoked by him later the same day (October l).[3] Undaunted by this minor setback, Ortho, one week later (October 8), petitioned another judge from the same district (Judge King) with a similar request for an extension of time. Judge King, apparently unaware of Judge Bond’s recent refusal of the same request, signed the motion. On October 12th, Ortho was ordered to show cause on October 30th why the October 8th order should not be recalled. Before this rule was heard, however, Ortho, on October 25th answered most of the interrogatories and objected to the remainder as being unduly burdensome .and beyond the scope of discovery.
On October 30th, the October 8th order granting Ortho an extension of time within which to answer or object was set aside. On November 2nd, defendant was ordered to show , cause why it should not be required to answer fully all interrogatories and pay all reasonable expenses imposable under La.C.C.P. Article 1469. Hearing on this rule was held January 3,1980, at which time Ortho was ordered to answer fully and completely interrogatories numbered 32, 33, 35,55, 56, and 60 (all of which had previously been answered or objected to on October 25) within ten days of January 3rd. This judgment was signed by Judge King on January 28th, fifteen days after defendant was supposed to have complied with the rule.[4]
On February 5th, plaintiff filed a rule to impose sanctions and contempt as provided by La.C.C.P. Article 1471, due to defendant’s failure to comply with the court order. Hearing was fixed for February 15th. This writ was applied for and granted before the February 15th hearing was held. The January 3rd order and the rule for La.C.C.P. Article 1471 sanctions were stayed by this Court pending determination of the writ. The matter was submitted on March 4, 1980.
Defendant Ortho asks this Court to relieve it of the burden of further answering interrogatories numbered 32, 33, 35, 55, 56, and 60. Defendant claims that interrogatories 32, 33, 35, and 60 have already been fully answered; and that 55 and 56 are overly broad, are beyond the scope of discovery, and are completely answerable only at great expense to defendant. The subject interrogatories and the answers and/or objections given by Ortho are quoted in full below:
“Interrogatory No. 32:
Is Ortho-Novum 1/50-28 recommended by the manufacturer to be used to treat dysfunctional uterine bleeding, in a pa *49 tient 17 years of age, with a history of renal disease (Hematuria)?
XXXII. [32]
Defendant, Ortho Pharmaceutical Corporation, is the manufacturer of an ethical drug and not a treating physician and, therefore, leaves such matters to the professional judgment of the treating physician.
Interrogatory No. 33:
If the product is ever used for the treatment of dysfunctional uterine bleeding, please state:
a) The conditions when it may be used,
b) The dosage, or what factors determine dosage,
c) Preliminary studies by the physician, if any,
d) Precautions to be given to the patient by the physician,
e) Follow-up studies, if any; by .the physician,
f) For what period of time,
g) Contraindications to be wary of after the initial dosage.
XXXIII. [33]
See answer to XXXII. [32]
Interrogatory No. 35:
State in detail what facts, tests, preliminary work-up or history should the doctor utilize prior to placing a 17 year old female on this product (Ortho-Novum) solely for the purpose of regulating her' menses.
XXXV. [35]
See answer to XXXII. [32]
Interrogatory No. 55:
Please list in chronological order the names and addresses of all persons who have received or claim to have received injuries resulting or suspected by them or their physician to have resulted in the use of Ortho-Novum or similar products manufactured by you and with respect to each please state:
a) The nature of the injury claimed,
b) The date the defendant first received notice of the injury,
c) The name and address of the attending physician involved.
LV. [55]
This information is available in the NDA which is on file with the Food & Drug Administration in Washington, D. C., as well as with the Ortho Pharmaceutical Corporation, as more specifically set out in the attached NDA answer.
NDA ANSWER [to 55 and 56]
Defendant objects to this interrogatory in that it is overly broad and unduly burdensome. With respect to the New Drug Application for the relevant time period, for the dosage allegedly used by the plaintiff, and with respect to the injuries allegedly sustained by plaintiff, defendant states that whatever information Ortho has concerning this interrogatory is disclosed in defendant Ortho’s New Drug Application filed with the Food and Drug Administration, United States Department of Health, Education and Welfare, Washington, D. C. and numerous volumes of correspondence between defendant Or-tho and the Food and Drug Administration subsequent thereto. Because of the great bulk of this material it would be unreasonable, burdensome and oppressive for Ortho to produce these volumes except for such files as are regularly maintained by defendant at its place of business in Raritan, New Jersey. The N.D.A. and supplements thereto consist of numerous volumes containing thousands of pages. There is only one complete set of the N.D.A. and pursuant to federal law it must be retained in Ortho’s home office. The Food and Drug Administration has the right to make and does make spot inspections of the N.D.A. from time to time, and the N.D.A. must be in the home office and up to date in order to comply with these inspections. If the N.D.A. were removed, Ortho could face a possible removal from the market of products covered by the N.D.A. The N.D.A. is a *50 living document and is added to on a daily basis and is in constant use by Or-tho in the day-to-day conduct of its business. To answer this interrogatory would require defendant to analyze and summarize the N.D.A. which would require a great deal of time and work on behalf of the defendant. A copy of the relevant portions of the N.D.A. will be made available for inspection by plaintiff at Rari-tan, New Jersey pursuant to an' appropriate protective order entered by the court limiting use of this material to this litigation and the parties thereto. This information is also available through the Freedom of Information Act and the Food and Drug Administration, Unitéd States Department of Health, Education and Welfare, Washington, D. C.
Interrogatory No. 56:
If any lawsuits have been filed against the defendant for injuries or death from the use of this product, please state with regard to each such lawsuit:
a) Its nature,
b) The day it was filed,
c) The place it was filed,
d) The court in which it was filed and its docket number,
e) The judgment or settlement reached,
f) The name, title and address of each employee or agent of the defendant who testified at the trial or gave a deposition,
g)The name, title and address of each expert witness who testified on behalf of the defendant either in court or by deposition.
LVI. [56]
See answer to interrogatory LV. [55]
Interrogatory No. 60:
If it is the contention of the defendant that the alleged occurrence was caused or contributed to by some act or omission of Virginia Ann Chambers, please state in detail each act or omission which it is contended caused or contributed to cause the alleged death of said Virginia Ann Chambers.
LX. [60]
None known at this time.”
Ortho has indicated it is willing to make all applicable records available for plaintiff’s inspection and copying at defendant’s place of business in New Jersey. This change in discovery methods is allowed under La.C.C.P. Article 1460.[5]
Plaintiff, on the other hand, asks us to first consider the prelude — the series of dilatory tactics engaged in by defendant prior to the interlocutory order of January 3rd. Specifically, plaintiff contends that defendant waived any right to object to the interrogatories when it failed to answer the interrogatories within the fifteen days required by Article 1458.[6] Thus, plaintiff as *51 serts, defendant has no right to refuse to further answer the interrogatories or to comply with the court order.
We disagree with plaintiff’s contention that defendant waived its right to answer or object to the interrogatories when it failed to do so within the fifteen day answer period provided in La.C.C.P. Article 1458. We interpret that Article to mean that if the interrogated party does not answer or object to the interrogatories within fifteen days, he is exposing himself to the risk that the party propounding the interrogatories will take advantage of La.C.C.P. Article 1469 by filing a rule to compel the delinquent party to furnish the answers. As long as the party awaiting the answers does not avail itself of the right to compel answers under Article 1469, the interrogated party is free to respond and/or object to the interrogatories without waiving any rights.
This situation is analogous to one in which a defendant fails to answer or otherwise respond to plaintiff’s petition within fifteen days. This failure then exposes the defendant to the risk that the plaintiff will obtain a default judgment against him. But as long as the default judgment is not entered against the defendant he is free to file exceptions or to answer the petition.
A similar set of circumstances existed in Trainor v. Young, 348 So.2d 1004 (La.App. 2nd Cir. 1977), writ denied 351 So.2d 169 (La.1977). There, plaintiffs failed to timely answer defendants’ interrogatories, and on April 13, 1977, the District Judge ordered plaintiffs to show cause why answers should not be filed by April 25th, or have their suit dismissed. On April 21st plaintiffs answered all but one of the questions. The answer to this question, plaintiffs asserted, was not discoverable and they sought a protective order to that effect. The court denied their protective order and plaintiffs filed for writs, which were granted by the Second Circuit.
The Second Circuit reversed the trial court and granted the protective order, holding that plaintiffs did not waive their right to object to the interrogatories since the interrogatories were answered prior to the return date of the rule to show cause and since the plaintiffs moved for a protective order pursuant to La.C.C.P. Article 1426.
In our case, the plaintiff never filed a rule to compel answers until after the interrogatories had been answered or objected to on October 25, 1979. Although plaintiff objected to the order granting defendant an extension of time, nothing in the law requires that this extension be asked for within the initial fifteen day time limit. Nor does the law preclude the trial judge from granting such an extension of time, even if the request is made after the fifteen day time period. Inasmuch as the answers and objections were filed prior to any order to compel answers, and were filed while the extension order was still in effect, we feel that the plaintiff’s claim that Ortho waived its right to answer and/or object is without merit.
Now that we have decided that defendant’s answers and objections were timely, we conclude that its answers to questions 32, 33, 35, and 60 are sufficient, and that its objections to questions 55 and 56 are well founded.
Interrogatories 32, 33, and 35 are concerned with the possibility that Ortho’s product, Ortho-Novum 1/50-28 is recommended by the manufacturer for some use other than as a contraceptive. To our minds, the answers to these questions are complete and are best summarized by Or-tho’s answer to interrogatory 31, an answer that is not in dispute:
QUESTION:
“31. What conditions does the product and similar products purport to treat or provide?”
ANSWER:
"Its only approved indication is for contraception.”
*52 The answers to 32, 33, and 35 express quite plainly that Ortho is not in the business of recommending Ortho-Novum 1/50-28 for use other than as a contraceptive; that if the product is used for other purposes, prescribing physicians would best know the circumstances under which the recommendation for non-contraceptive use (such as the treatment of dysfunctional uterine bleeding) is made.
Interrogatory 60 was also fully answered. When asked to specify which acts or omissions of the deceased constituted contributory negligence (if that defense was to be used by Ortho) Ortho replied that it knew of none at the time of answering. It is difficult to imagine how a more complete answer could be supplied.
All of, the answers to interrogatories 32, 33, 35, ana 60 are subject to the continuing nature of the interrogatories (as provided in interrogatory number 63) and must be supplemented if further information is obtained by the defense.
The objections to questions 55 and 56 should have been considered by the trial court since the objections were timely. It appears, though, that the judge felt Ortho waived its right to object and, hence, did not adequately consider the merits of Or-tho’s objections to certain interrogatories. Therefore, this case must be remanded for the taking of evidence to ascertain the validity of the objections to questions 55 and 56; the possible extent of the burden placed upon defendant by requiring it to answer; and to issue the appropriate protective order pursuant to La.C.C.P. Article 1426 if the court finds that the defendant would be subjected to undue burden or expense if it was forced to answer.
The order awarding plaintiff $150.00 as attorney’s fees and all costs incurred in connection with his motion to compel answers is set aside since the motion was made after answers and interrogatories had already been filed.
For the above and foregoing reasons, the interlocutory judgment of the District Court ordering defendant, Ortho, to answer fully and completely interrogatories numbered 32, 33, 35, 55, 56, and 60 within ten days of January 3, 1980, and further ordering Ortho to pay $150.00 in attorney’s fees as well as all costs of the motion to compel answers is set aside and it is hereby ordered that defendant’s answers to interrogatories numbered 32, 33, 35, and 60 are sufficient subject to the continuing nature of the interrogatories. It is further ordered that the case be remanded to the District Court for the purpose of taking evidence on the validity of defendant’s objections to interrogatories numbered 55 and 56. All costs of these proceedings are assessed one-half to plaintiff and one-half to defendant, Or-tho.

REVERSED AND REMANDED.

. As authorized by Article 5, Section 10 of the Louisiana Constitution of 1974, La.C.C.P. Article 2201, and Rule XII of the Uniform Rules of the Courts of Appeal.

. We reiterate that the granting of this writ application in no way signals the demise of our rule that supervisory writs will be issued sparingly. Alexander v. Administrator, Division of *48 Employment Security, 302 So.2d 64 (La.App. 3rd Cir. 1974); Greater Baton Rouge Airport District v. Hays, 345 So.2d 66 (La.App. 1st Cir. 1976), writ denied 345 So.2d 897 (La.1977).

. Plaintiff claims the order was rescinded when Judge Bond was alerted to the dilatory tactics theretofore used by defendant. However, the record does not disclose why the rescission occurred.

. The trial court’s action was proper. Since the order was not final but was interlocutory in nature and not appealable (See Advertiser, Division of Independent, Inc. v. Tubbs, 199 So.2d 426 (La.App. 3rd Cir. 1967)) the judgment need not have been signed and defendant could have sought supervisory writs prior to the signing of the judgment. Also, La.C.C.P. Article 1914 dispenses with the requirement to send notice of an interlocutory judgment unless the matter is taken under advisement and a request for notice has been made. Here, the interlocutory order was rendered in open court, so no notice was necessary even though it was requested.

. “Art. 1460. Option to produce business records
Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit, or inspection of such business records, or from a compilation, abstract, or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit, or inspect such records and to make copies, compilations, abstracts, or summaries.”

. “Art. 1458. Interrogatories to parties; procedures for use
Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons' for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. The party upon whom the interrogatories have been served shall serve a copy of the answers, arid objections if any, within fifteen days after the service of the interrogatories, except that a defendant may serve answers or objections within thirty days after service of the petition upon that defendant. The court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under Article 1469 with respect to any objection to or other failure to answer an interrogatory.”